And we will go immediately into the Walker v. T-Mobile case. And since we have the same counsel, we'll give you your new 10 minutes. I assume you want to reserve two minutes for that, too, as well? Yes, sir. Okay. Let's go forward, then, and we'll hear you on Walker, please. Okay. In the Walker case, I believe that the district court judge commented in terms of our breach of the duty of good faith and fair dealing claim. I think the judge commented that there wasn't anything in the record regarding a policy and just referenced a statute violation. So the plaintiff did assert that they breached the duty of good faith and fair dealing by not informing Ms. Walker of her rights, and that they violated statutes as another breach of the duty of good faith and fair dealing. But apparently, the district court judge said, well, statutory violations aren't good enough to constitute a breach of the duty of good faith and fair dealing. There has to be some kind of a policy, company policy, and you didn't present the company policy, so there can't be any breach of the duty of good faith and fair dealing. I don't think I wrote very much about that, but I had oral argument. I think it's something I'd ask the court to take a close look at, because I do think that if a company chooses not to inform its employees of statutory rights that, by law, they're supposed to tell them about, and that employee cites a breach of the duty of good faith and fair dealing in the employment relationship, that the employer should not get off the hook because the employee is complaining of statute violations instead of – well, in other words, the judge's reasoning would mean that an employer would not have to have any kind of policies or handbook or any other kind of information to an employee, and therefore, the employee couldn't bring a breach of the duty of good faith and fair dealing, so it would pay an employer not to give them information to prevent that claim. So that's not logical. Mr. Starr, let me – you know, you read this record, and it would appear that Ms. Walker had a number of instances in which she failed to properly perform her job and that there seemed to be an adequate basis to terminate her. Now, I think what you're arguing is, well, they didn't terminate her because of a failure to properly perform her work. They terminated her why? Because she took family leave she shouldn't have taken? No. Ms. Walker asked for intermittent family leave when she injured her leg. She asked – she made an inquiry about it, and she was given the same erroneous information as Ms. Cooper and the other people in the office. Well, what was the erroneous information that she was given? You're a supervisor, and you're not eligible for intermittent family leave. Did she take it anyway? Was she given the leave anyway? She was given five days off by her health care practitioner at Kaiser Permanente, Practical nurse, or the nurse. Right, right, which is a health care provider under Oregon law, which we provided. But in that practice, the doctor had a sign-off and the doctor didn't sign off. Pardon? I mean, true, the nurse could do it, but in the practice that the nurse, her health care provider, had a rule, if I recall, that only a doctor could sign off on work release requests. Well, there was a doctor that got involved, or a second opinion that got involved, because the employer asked for another opinion, or asked for something under the context of workers' compensation. And that doctor changed the prescription of the nurse practitioner. A nurse practitioner isn't a nurse. A nurse practitioner is a nurse practitioner who prescribes medication and does 90% of what a doctor does in all practical terms. That's why they're an accredited health care provider under Oregon law. So there was a medical opinion. She had the time off. This other person came in and changed that. And there was no third opinion that came up or any information about that. Again, we get to the issue of prejudice or harm. Is there any consequence? I know you say she was fired, but putting aside, that's a different claim. On the FMLA claim, did you put in the record any evidence from another doctor, an expert, that said that she needed more time off from work? Yeah, it's in the record. The doctor's notes that are in the record show that she would make a statement. She would continue to need ongoing treatment beyond, I think it was May 21st was the date in the record. Right, but did she? Her condition was such that she would continue to need ongoing treatment, and therefore, she would need intermittent family leave. Well, but that's a, but the therefore is the question. Is it in the record that it says, therefore, she would need leave? Or just that she would need treatment? Well, that's the information the employer gets. The doctor isn't responsible for being a family leave expert. They give the information. And the law provides that the employer, with that information, then presses the buttons and family leave comes out. Well, what did the doctor say that she needed? In other words, what treatment was it that she needed that would implicate family leave? She had to be off her feet, right? Well, yeah, we get into this tragic set of circumstances where she's back at work in a wheelchair. And she's back at work, as you see from the record, under the pretext that people can come to her for the coaching rather than her going to them. And you also see in the record that when she got to work, they said, no, you're going to have to go to other people. You're going to have to go move yourself to their workstations. That, again, makes no sense, any rational sense at all, except you can infer some kind of discriminatory motive there. They didn't want her to succeed when she came back. So they made it even more difficult for her to do anything when she came back. So she missed the full amount of time allotted by the first health care provider. There was a second health care provider. She was denied the opportunity to have a third health care provider come in and make an opinion about whether she should be stressed, her injury and her own self should be stressed by being back at work running around in a wheelchair to these workstations, or whether she should just stay home, flat on her back or whatever else they said, until she healed. She was denied that practical medical opinion, which is different. But you could have gotten it in the course's litigation, expert testimony that that's what you needed, right? To pay somebody like that to go back and provide you with something like that? No, I don't think so. I think you have the record. We see it in social security cases. They examine the records and they say this is what the standard care would be. They call them medical examiners. People do it all the time. Well, the first person who saw her, the person who diagnosed her and prescribed for her, had a different opinion than the second person. And under the law, the employer kicks in a third person and pays for it. It didn't happen here. This is an employer who was deliberately keeping that information to herself. But the question is, assuming they had done that, what would the result have been? If the result would have been the same as the doctor, then where's your damage? Putting aside that she got fired, that's a different question. Well, if you look at the case law, the case law puts the burden on the employer to engage in that process so that my client doesn't have to pay $5,000 for somebody with high pollutant credentials to come in and try to make the case.  by following these simple procedures, simple, simple testimony. It is not the plaintiff's duty, after the fact, in a court of law, to compensate for their failure. I get back to this, and maybe a doctor is not as competent as a nurse practitioner. But the doctor said that she could go back to work, right? With those conditions, yeah. And so what you're saying is the doctor's opinion, and this isn't a doctor, some independent doctor. This is her family practitioner, her doctor, from her. Isn't this the doctor who works with the nurse practitioner? This is a doctor at Kaiser Permanente. It wasn't her personal physician. This was somebody that came into the scene after T-Mobile asked for. But did T-Mobile send her to Kaiser Permanente, or is that where she goes for medical care? She went there, and then T-Mobile initiated the contact with Kaiser Permanente when they didn't like the five days off. Who does the nurse practitioner work for? Kaiser Permanente. Let's let Mr. Severson respond for T-Mobile, and then you'll have your rebuttal time. Mr. Severson? Your Honor, if it pleases the Court, may I begin by responding to Judge Moskowitz's earlier question about what's in the record concerning FMLA versus OFLA? Your Honor, at excerpts of record 56 through 66, there are a series of forms that are For which case? In the Cooper case, Your Honor. Sorry. There are a series of forms that, first, there's a leave of absence form, a request for leave of absence form, various certifications, descriptions of FMLA rights, et cetera. And I believe that we did not put into this record the entirety of the announcements and so on that were made to the plaintiffs or to the workforce for the simple reason that there was never any issue in this case that Ms. Cooper had been given FMLA leave, and there were several documented indications of that. So I don't believe the manual's not in the record. I don't believe the manual's in the record, Your Honor. These are just the forms that they would use. I believe that's right. And they describe her rights, and she obviously took full advantage of them, so there was no issue. Did she sign any of these forms? Yes, she did, Your Honor. Now, secondly, with respect to the OFLA postings, I'm not sure. I think I was confusing this with another case brought by Mr. Stark. I don't think OFLA postings were an issue in this case either, nor was there testimony in this case about that, because there was no OFLA claim in either of these two cases. So I hope that responds to the Court's issues there. With regard to the points raised by Mr. Stark, it seems to me that the Court has a full understanding of the record. Kaiser Permanente was her health care provider. She saw a nurse practitioner. The nurse practitioner said five days off. The workers' comp carrier, since it was a workplace injury issue, suggested that modified work might be possible, but that required, and the law permitted, a contact with a health care provider to follow up on whether a modified work offer would be acceptable. T-Mobile did so in full compliance with its workers' comp obligations and the law. And at that point, Kaiser said, well, we have to have an MD see this patient. The MD saw the patient. The MD said, you can return to work with certain restrictions. T-Mobile immediately complied with all of those restrictions. There was never any further need, at least expressed by either her health care provider or by her, for additional time. And again, the question, though, in both of these cases is, did the district court err? Or, since this is de novo review, is there any evidence in this record that this leave was taken into account in some way, shape, or form, given that you have this work record that begins well before any leave with two formal warnings arising out of a three-day investigation by HR into various inadequacies or subpar performance of the plaintiff, at least nine verbal counselings that go on throughout this entire period? I mean, the leave aspect had nothing to do with it. There is no evidence that it had a thing to do with it. And the district court, again, we think, got it right. So if the court has questions, I wish to entertain them. Otherwise, I'll sit down and be quiet. Thank you very much. Thank you, Your Honor. Mr. Stark, you have two minutes to finish. We'll give you your full two minutes. I think what you'll see in any forms is, what you won't see in any forms, is any granting of intermittent family leave for Ms. Cooper. It didn't happen. I thought your claim was that she wasn't properly notified what her rights were to have them, not that she didn't get them. Well. Isn't that correct? Yeah. When she asked for it, she was told, you're a supervisor. You don't get intermittent leave or we'll look into it. At the beginning, there was clearly an inconsistency there. But she got leave. She got the leave. She was not docked for it, right? She was not docked for the time that she took off in that first phase because of an informal arrangement with the supervisor. But she was never on intermittent leave status, and they don't have any documents to show that. As for Ms. Cooper. Is it your position that under the FMLA, she should have been put on intermittent status and that during that period, say that period had lasted for a year, that regardless of her job performance, she could not have been fired during that time? Is that your position? No, of course not. During the period of time that she was on leave and after that, this is the, well, I'm going back to Ms. Cooper again. We're on Ms. Walker. But the same principle applies to Ms. Walker. The objective data-based evaluation of Ms. Walker's performance, the objective material, including contemporary material the month before she was terminated, that objective material shows satisfactory performance, meaning satisfactory results. Her team was producing, the goals were being met. If you look at what they held against her, it's criticisms for how she was doing things.  rather than throughout the month, et cetera, even though the results she was accomplishing with her team were satisfactory. Thank you, Mr. Stark. We appreciate it. Thank you. Both counsel for your argument in both cases. The case just heard is submitted. We will next hear argument in the case of Gomez Morales versus Pacific Northwest Renal. Mr. Schneider, I believe.
judges: Thompson, Smith, Moskowitz